HOUSTON PETROLEUM CO., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. AUTOMOTIVE PRODUCTS CREDIT ASSOCIATION, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued February 18, 1952—Decided March 17, 1952

124

*Mr. William C. Nowels* argued the cause for defendant-appellant (*Messrs. Stein and Stein,* attorneys; *Mr. Frederick Z. Feldman,* on the brief).

*Mr. Samuel Koestler* argued the cause for plaintiff-respondent (*Messrs. Koestler & Koestler,* attorneys).

The opinion of the court was delivered by

BURLING, J. This is a civil action. The plaintiff instituted the suit by complaint against the defendant in the Superior Court, Chancery Division, seeking the remedy of injunction for the enforcement of certain restrictive covenants relating to real property. After trial, the Superior Court, Chancery Division, entered judgment dismissing the complaint. The plaintiff pursued an appeal to the Superior Court, Appellate Division, and that court reversed and set aside the judgment of the Chancery Division. Thereupon the defendant filed a petition for certification with this court, which was granted. *Houston Petroleum Co. v. Automotive Products Credit Association, Inc.,* 8 *N. J.* 248 (1951).

There is little controversy here as to the facts which became the foundation of this suit. The plaintiff in its complaint claimed, and the defendant in the pretrial order admitted,

that one Lotta D. Byrnes and others, partners trading as Byrnes Realty Company (hereinafter called Byrnes), being the owners of a tract of land (including the premises in question) located in the City of Linden, County of Union and State of New Jersey, on the northwesterly side of New Jersey State Highway No. 25 (also known as Edgar Road) entered into a certain agreement in writing with the City of Linden dated April 15, 1947, recorded April 17, 1947, in Book 1620 of Deeds for Union County at page 434, etc., which included the following pertinent language:

"Whereas, Byrnes Realty Company has applied to the Mayor and Common Council of the City of Linden, in the County of Union, to reclassify said premises so that the same shall come within and be subject to the provisions of Section 6-E (light industrial district) of the zoning ordinance of the said City of Linden; and whereas, Byrnes Realty Company in connection with its said application has agreed that said lands and premises if and when zoned as a light industrial district, shall be subject to the covenants and restrictions hereinafter set forth; * * *."

The covenants and restrictions contained in the aforesaid agreement included a setback of 75 feet from the northerly line of the right-of-way of State Highway No. 25 and a provision that the area between the northerly line of the right-of-way of said highway and the setback line be "seeded and suitably planted, excepting, however, such part of said area (not to exceed fifty (50%) per cent thereof) as shall be constructed and used for driveways and parking space."

It was further provided that said covenants and restrictions should become effective on the rezoning of the area as requested by Byrnes and continue in effect so long as the premises remained so zoned or until April 1, 1977, provided that they might be released or modified at any time by agreement in writing between the City of Linden and the owner or owners of all or all portions of said land and premises.

The City of Linden, by ordinance adopted on the same date (April 15, 1947) rezoned the Byrnes tract described in the above mentioned agreement to include said lands and

premises in "Section 6-E (light industrial district)." It is clear from the evidence introduced at the trial of this cause that this rezoning was effected on consideration of the making of the aforesaid agreement. It was also claimed and admitted that on March 29, 1948, Byrnes conveyed all the said tract, subject to the covenants and restrictions contained in the aforesaid agreement, to Industrial Land Corporation, which in turn on the same date and likewise subject to said covenants and restrictions conveyed all land and premises to Clifford J. Colville and others trading as Macner Realty Company (hereinafter referred to as Macner). In the pretrial order it was stipulated that the deeds for said conveyance contained the following language:

"This conveyance is made subject to * * * covenants and restrictions imposed upon said premises by a certain agreement made between the grantor and the City of Linden, dated April 15, 1947, * * *."

It was further claimed and admitted that on July 1, 1949, Macner, then being owners of the entire tract, entered into an agreement in writing with the City of Linden modifying the agreement of April 15, 1947, as to a certain 300 feet of the frontage of said tract on State Highway No. 25, so as to relieve that portion of the tract of the setback and seeding and planting covenants and restrictions, and that this modification agreement was recorded on July 22, 1949.

Macner thereafter, by deed dated August 1, 1949, and duly recorded, conveyed the aforesaid portion of said tract which had been released from the restrictions to one Sand who subsequently conveyed the same portion to Houston Petroleum Co., a New Jersey corporation (hereinafter called the plaintiff); Macner also conveyed an adjoining portion of the tract, subject to restrictions and conditions of record, to the plaintiff on May 16, 1950. By deed dated June 12, 1950, and duly recorded, Macner conveyed, likewise subject to restrictions and conditions of record, to Automotive Products Credit Association, Inc., a New Jersey corporation (hereinafter called

the defendant) a portion of the Byrnes tract immediately adjoining the plaintiff's additional portion of the tract, aforesaid, and also fronting on State Highway No. 25. It was further admitted in the pretrial order that on July 11, 1950, the building inspector of the City of Linden granted the defendant a building permit for the construction upon its portion of the tract a large gasoline service station in conformity with plans and specifications which showed that the defendant intended to seed and plant less than ten per cent of the land area, between the line of State Highway No. 25 and the 75-foot setback line, and to pave 90 per cent of the said land area with bituminous pavement and concrete slabs, in clear violation of the covenants and restrictions hereinabove quoted, and that the defendant commenced to place gasoline pumps on the premises in positions designated in the aforesaid plans.

The plaintiff filed its complaint in this cause on July 17, 1950, in the Superior Court, Chancery Division, seeking to have the defendant enjoined from violating the covenants and restrictions imposed on its said property by the aforesaid agreement of April 15, 1947, between Byrnes and the City of Linden, and by supplemental complaint filed October 5, 1950, sought a judgment in the nature of a mandatory injunction to require the defendant to remove such part of its construction as was violative of said covenants and restrictions. An interlocutory injunction was denied by the trial court on July 31, 1950. After trial final judgment was entered on January 29, 1951, in the Superior Court, Chancery Division, in favor of the defendant and dismissing the plaintiff's complaint. On the plaintiff's appeal to the Superior Court, Appellate Division, the judgment was reversed and remanded, on August 30, 1951, with direction that a mandatory injunction be issued directing the removal of the improvements violating the covenant. The defendant filed with this court its petition for certification to the Appellate Division to review said judgment of reversal, and said petition was granted resulting in this appeal as aforesaid.

■ The defendant asserted below and asserts here among its questions involved on appeal that the covenants and restrictions sought by plaintiff to be enforced are invalid and unenforceable for the reason, *inter alia*, that the agreement of April 15, 1947, between Byrnes and the City of Linden constituted an abuse of the zoning power by the City, and was therefore *ultra vires*, illegal and void. With this contention we agree.

■ The latest exposition of the law applicable to the foregoing conclusion is contained in *V. F. Zahodiakin, etc., Corp. v. Board of Adjustment, Summit,* 8 N. J. 386 (1952). This court there held (at *pp.* 394–395) that the zoning power may not be exerted to serve private interests merely nor may the principle be subverted to that end, that a purported contract so made was *ultra vires* and all proceedings to effectuate it were *coram non judice* and utterly void.

The same principle is implicit in the decisions of this court in *Beckmann v. Township of Teaneck,* 6 N. J. 530 (1951) wherein (*p.* 535) the asserted authority of a municipality to contract for the exercise of legislative powers was denied by the court and *Anschelewitz v. Belmar,* 2 N. J. 178, 183 (1949) wherein the court said:

"A municipality cannot act as an individual does. It must proceed in conformity with the statutes, or in the absence of statute agreeably to the common law, by ordinance or resolution or motion. * * *. Especially is this so where real property is concerned * * *."

■ Contracts thus have no place in a zoning plan and a contract between a municipality and a property owner should not enter into the enactment or enforcement of zoning regulations. See *Bassett on Zoning, p.* 184 (1940). Compare *Speakman v. Mayor and Council of North Plainfield,* 8 N. J. 250, 257 (1951); *Lynch v. Hillsdale,* 136 N. J. L. 129, 134 (*Sup. Ct.* 1947), affirmed *per curiam* 137 N. J. L. 280 (*E. & A.* 1948); *N. J. Good Humor, Inc., v. Bradley Beach,* 124 N. J. L. 162, 164–165, 168–169 (*E. & A.* 1940); *Friedman*

*v. Maines,* 8 *N. J. Misc.* 703 (*Sup. Ct.* 1930), affirmed *per curiam,* 110 *N. J. L.* 454 (*E. & A.* 1933). The covenants in question not only were imposed on the land for the purpose of obtaining rezoning of the Byrnes tract, but are themselves limited in duration to the period of time during which the premises remain zoned for light industry. Thus they seem related not to the benefit of individual portions of the tract but to zoning for the entire tract. In addition, the recorded agreement provides for release or modification of the covenants at any time by an agreement *to which the City of Linden is made a necessary party.* This again is referable to zoning, and is within the particular condemnation of the law as stated in the *Zahodiakin* case, *supra.* Thus it may be concluded that the covenants in themselves exhibit a plan in contravention of the public policy incorporated in the constitutional and statutory provisions relating to zoning. The former Supreme Court of this State in *Sharp v. Teese,* 9 *N. J. L.* 352, 354 (*Sup. Ct.* 1828) held:

"The attempt to contravene the policy of a public statute is illegal. Nor is it necessary to render it so that the statute should contain an express prohibition of such attempt. It always contains an implied prohibition; and to such attempt the principles of the common law are invariably and deadly hostile, not always by an interference between the parties themselves, or by enabling the one to recall from the other, where *in pari delicto,* what may have been obtained; but by at all times refusing the aid of the law to carry into effect or enforce any contract which may be the result of such intended contravention."

And this court has reiterated the rule that a contract in contravention of the public policy of this State will not be enforced. *Lobek v. Gross,* 2 *N. J.* 100, 102 (1949). We therefore conclude that the restrictive covenants in question, being violative of the public policy of this State implicit in our zoning laws, are illegal. Compare *Driscoll v. Burlington-Bristol Bridge Co.,* 8 *N. J.* 433 (1952); *Stack v. P. G. Garage, Inc.,* 7 *N. J.* 118, 121–122 (1951). The agreement establishing the covenants being illegal and void, the plaintiff is not entitled to their enforcement.

■ Among the questions involved are two further propositions. The first of these is whether upon the basis of the common grantor's express agreement in writing (the purported "modification agreement" of July 1, 1949) to bind his remaining land, the plaintiff's rights should be enforced. And the second is whether there was created by the common grantor a neighborhood plan or scheme to the enforcement of which the plaintiff is entitled. It was upon these propositions that the Superior Court, Appellate Division, principally rested its judgment. The common grantor's purported modification agreement of July 1, 1949, approved by resolution of the Common Council of the City of Linden on July 19, 1949, is subject to the same condemnation as has been hereinabove addressed to the original agreement between Byrnes and the city, and is void as against public policy.

■ The principles upon which the existence of a neighborhood scheme depends are so firmly established that no repetition here is deemed necessary. Acting upon the premise that a neighborhood scheme was created by the common grantors, independent of the illegal municipal agreement, it is unenforceable by the plaintiff. It is settled that a restrictive covenant is a contract dependent upon reciprocal or mutual burdens and benefits shared by each lot owner brought within the scheme thereof. *Weinstein v. Swartz*, 3 *N. J.* 80, 86 (1949). The mutual and reciprocal burdens and benefits of the original neighborhood plan (effected by the Byrnes covenants) were so altered by the purported modification agreement as to render them unenforceable by the plaintiff for lack of mutuality. Compare *Weinstein v. Swartz, supra; Welitoff v. Kohl*, 105 *N. J. Eq.* 181 (*E. & A.* 1929). Upon the Byrnes conveyance to Macner the scheme established by Byrnes was undisturbed, for the entire tract was the subject of the conveyance. The plaintiff argues to the effect that the neighborhood scheme that became established is not the result of the Byrnes agreement, but of the Macner modification agreement, and therefore the plaintiff is entitled to the protection of the covenants,

on the settled principles that the common grantor may or may not bind himself by the restrictions, *Clarke v. Kurtz,* 123 *N. J. Eq.* 174, 177 (*E. & A.* 1937), and that complete uniformity of the restrictions over the entire tract subject to the scheme is not required, *Weinstein v. Swartz,* 3 *N. J.* 80, 86 (1949). To this argument defendant interposes the established rule that any neighborhood scheme to be effective and enforceable must apply to all lots of like character brought within the scheme. *Ibid.* There is no doubt, under the circumstances of this case, that plaintiff's lot which was released from the restrictions was "of like character" with the remainder of the tract. It is also settled that a plaintiff who has by his own conduct defeated the object and purpose of a covenant of this nature is not entitled to injunctive relief for its enforcement. Compare *Dalstan v. Circle Amusement Co.,* 130 *N. J. Eq.* 354, 356 (*E. & A.* 1941); *DeGray v. Monmouth Beach Co.,* 50 *N. J. Eq.* 329 (*Ch.* 1890), affirmed 67 *N. J. Eq.* 731 (*E. & A.* 1894). The plaintiff in the present case has not proved its right to the application of the doctrine of the *Clarke* case, *supra.* The record shows that the common grantor, Macner, accepted title subject to, and was bound by, the covenants in the Byrnes agreement. Assuming but not deciding that Macner, being owner of the entire tract, could alter the neighborhood scheme previously established and eliminate its own premises therefrom without destruction of the scheme, it does not appear that such was the course followed. The attempted release of the plaintiff's premises was effected for the benefit of Sand who was acting as agent for the plaintiff. We find that under the circumstances of this case the restrictive covenants would not be enforceable by the plaintiff.

An additional question presented by the defendant on this appeal is whether a plaintiff may enforce the covenants involved in this litigation for the purpose of stifling competition. The source of the defendant's contention lies in the law approved by the former Court of Chancery in the case of *Coudert v. Sayre,* 46 *N. J. Eq.* 386, 389 (*Ch.* 1890) namely:

" 'Every owner of real property has a right to so deal with it, as to restrain its use by his grantee, within such limits as to prevent its appropriation to purposes which will impair the value or diminish the enjoyment of the land which he retains. The only restriction on this right is, that it shall be exercised reasonably, with due regard to public policy, and without creating any unlawful restraint of trade.' "

We find that restrictions were placed on the *entire* tract and were not designed for the purpose now asserted. The provision for release or modification is applicable to the entire tract and includes no permission for release of one portion or more of the tract from those restrictions. This is evident from the text of the clause. The attempt to release one portion by the purported "modification agreement" and to enforce the restrictions against the balance of the tract is a corruption of the apparent purpose of the restrictions. To this extent the attempted enforcement was admittedly in restraint of competition. It is obvious upon this view of the matter that for such purpose the plaintiff has no standing. Compare *Brewer v. Marshall and Cheeseman,* 19 *N. J. Eq.* 537 (*E. & A.* 1868); *Irving Investment Corp. v. Gordon,* 3 *N. J.* 217, 221 (1949).

The defendant's fifth and final question involved on this appeal presents the general argument that courts of equity do not aid one man to restrict another in the uses to which he may lawfully put his property unless the right to such aid is clear. This is a recognized rule in this State. *Howland v. Andrus,* 81 *N. J. Eq.* 175, 181 (*E. & A.* 1913). Under the circumstances of this case the plaintiff is not entitled to enforcement of the restrictive covenants against the defendant.

For the reasons stated, the judgment of the Superior Court, Appellate Division, is reversed, and the judgment of the Superior Court, Chancery Division, is reinstated and affirmed.

*For reversal*—Justices HEHER, OLIPHANT and BURLING—3.

*For affirmance*—Chief Justice VANDERBILT and Justice WACHENFELD—2.